# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CINDY REDEL, | ) | CASE NO. 1:14-CV-01150 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Plaintiff, Cindy Redel ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On August 22, 2007, Plaintiff filed her application for SSI, alleging a disability onset date of July 14, 2005. (Transcript ("Tr.") 93-94, 99, 242.) The claim was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 93-94, 134.) Following an administrative hearing, ALJ Gerald L. Meyer issued a written decision denying Plaintiff's application in August 2010. (Tr. 76-92, 99-104.) The Appeals Council granted Plaintiff's request for review of

ALJ Meyer's decision and remanded the matter to ALJ Traci M. Hixon (hereafter, the "ALJ") to obtain additional evidence and testimony and issue a new decision. (Tr. 110-112.) The ALJ held a hearing on December 6, 2012, at which Plaintiff and a vocational expert ("VE") testified. (Tr. 47-55.) On December 27, 2012, the ALJ found Plaintiff not disabled. (Tr. 28.) On April 2, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On May 29, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 15, 16.)

Plaintiff asserts the following sole assignment of error: The ALJ erred in evaluating the opinion of consultative examiner Dr. Lester.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in December 1965 and was 41-years-old on the alleged disability onset date. (Tr. 39.) She had a limited education and was able to communicate in English. (*Id.*) She did not have any past relevant work. (*Id.*)

### B. Medical Evidence

#### 1. Medical Reports

Plaintiff sought hospital treatment on July 21, 2005, for headache and vision loss stemming from an incident that occurred three days prior in which she accidentally struck her head on a car door. (Tr. 435.) The attending physician, Daryl Donald, M.D., noted that Plaintiff's right pupil was fixed and dilated approximately 4mm. (*Id.*) Her left

2

pupil was reactive and extraocular muscles were intact. (*Id.*) Plaintiff had limited visibility due to corneal opacification. (*Id.*) Dr. Donald referred Plaintiff to neurology. (Tr. 435-436.) He diagnosed an acute non-hemorrhagic stroke with vision loss and a nonreactive right pupil with an undetermined etiology. (Tr. 436.)

Following the July 2005 incident, Plaintiff began treatment at the Wooster Eye Center. She was diagnosed with uncontrolled advanced gluacoma with atrophy. (Tr. 448, 451-452, 459.) In a letter dated May 16, 2006, Harry A. Zink, M.D., noted that Plaintiff "supposedly" had prior iridectomies in each eye after a previous acute glaucoma attack. (Tr. 451.) Dr. Zink noted that on his examination, there was an unpatent iridotomy in the right eye, and therefore a right-eye iridectomy was performed on January 24, 2006. (*Id.*) Plaintiff missed follow-ups after her iridotomies. (*Id.*) She returned on April 13, 2006, but had not been taking her medication for 24 hours. (*Id.*) The physicians explained that it was imperative that she return for a follow-up three hours after receiving eye-drops, but she did not do so, and did not return despite being called on April 14, 20, 21, 22, and 25. (*Id.*) As such, Dr. Zink noted that he had "no idea what the consequences in the right eye are." (*Id.*)

March 12, 2008, records from Sugarbush Eye and Laser Center show that Plaintiff had been treated there since October 18, 2006, and that she had uncontrolled glaucoma and advanced glaucomatous optic atrophy of the right eye. (Tr. 456, 459.)

On July 2, 2008, records from Sugarbush Eye and Laser Center reflect that Plaintiff had no more than light perception in the right eye and 20/30 vision in the left eye. (Tr. 473-474.) The ocular pathology responsible for Plaintiff's vision loss was

3

chronic open angle glaucoma bilaterally and optic atrophy on the right. (Tr. 476.)

According to an October 2008 treatment note from Gary D. Burton, M.D., Plaintiff experienced no improvement in side vision. (Tr. 478.) At a May 2010 glaucoma check, Plaintiff reported increased pressure and throbbing in her forehead. (Tr. 482.)

On April 13, 2010, Dr. Richard Walsh reported that Plaintiff suffered from stress incontinence and open-angle glaucoma. (Tr. 490.) On May 10, 2010, Dr. Walsh reported that Plaintiff suffered from stress incontinence and generalized anxiety disorder, and on May 19, 2010, he reported that she suffered from a generalized anxiety disorder with worrying, apprehension, insomnia, palpitations, and fear of going blind. (Tr. 485, 487, 490.)

On April 19, 2012, James Spindler, M.S., a psychologist, was scheduled to examine Plaintiff at the Social Security Administration's request, but found that Plaintiff was too intoxicated to be evaluated. (Tr. 493.)

### 2. Agency Reports

Plaintiff underwent an ophthalmological consultative examination with John W. Drury, M.D., on April 23, 2008. (Tr. 461-462.) Dr. Drury found that Plaintiff had no light perception in her right eye, and 20/30 vision with correction in her left eye. (Tr. 462.) Plaintiff's right disc was "totally cupped with optic atrophy characteristic of severe Glaucoma," but her left disc looked "relatively normal." (*Id.*) Dr. Drury concluded that Plaintiff "should be able to do anything that doesn't require better than 20/30 vision." (Tr. 461.)

On May 22, 2008, Walter Holbrook, M.D., completed a physical residual functional capacity (RFC) assessment form. (Tr. 464-471.) He opined that Plaintiff had

4

no restrictions apart from limited depth perception and the need to avoid all exposure to hazards due to monocular vision.  (Tr. 467.)  On July 31, 2008, Willa Caldwell, M.D., affirmed Dr. Holbrook's assessment as written.  (Tr. 477.)

Plaintiff underwent an opthalmological consultative examination with Harvey A. Lester, M.D., on June 6, 2012.  (Tr. 507-511.)  Dr. Lester found that Plaintiff had no vision in her right eye and 20/40 vision with best correction in her left eye.  (Tr. 507.)  He opined that Plaintiff could frequently climb stairs and ramps; occasionally stoop, kneel, and crawl; and never climb ladders and scaffolds or balance.  (Tr. 508.)  Dr. Lester indicated that Plaintiff was unable to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles.  (*Id.*)  He indicated that Plaintiff could not read small print or ordinary print, view a computer screen, or determine differences in the shape and color of small objects such as screws, nuts, or bolts.  (*Id.*)  He further indicated that Plaintiff was unable to drive or walk at a reasonable pace on rough or uneven services.  (Tr. 511.)  Dr. Lester opined that Plaintiff could never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle, and could occasionally be exposed to dusts, odors, fumes, and pulmonary irritants and frequently be exposed to loud noise.  (Tr. 512.)  He did not identify the medical findings that supported his assessment.  (Tr. 511.)  Dr. Lester noted that Plaintiff had no vision in her right eye and that if she was not treated with medications she "can and will" lose vision in her left eye.  (*Id.*)

**C.**     **Hearing Testimony**

    **1.**     **Plaintiff's Hearing Testimony**

Plaintiff testified that she was blind in her right eye. (Tr. 59.) She stated that her right eye has caused problems for her since 2005. (*Id.*) Plaintiff testified that she is losing vision in her left eye and that her left eye burns and waters sporadically. (Tr. 60.) She stated that her vision problems caused headaches. (*Id.*) She also complained of anxiety and depression. (*Id.*)

## 2. Vocational Expert's Hearing Testimony

Ted Macy, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age and education level. (Tr. 69.) The hypothetical individual could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour day and sit for six hours in an eight-hour day; occasionally climb stairs and ramps and bend, stoop, kneel, and crawl; reach in all directions; and handle, finger, and feel. (*Id.*) The individual should not be exposed to any hazardous conditions and should not be required to read small print. (*Id.*) She should only occasionally be required to view a computer screen. (*Id.*) The individual has no depth perception and should not be required to perform any task that consists of spotting small imperfections, specifically things smaller than a compact disc (3-5 inches). (*Id.*) The individual could perform simple, routine tasks with simple, short instructions; make simple, work-related decisions; have few workplace changes; and have only superficial interactions with customers, supervisors, and the public, meaning no confrontation, negotiation, or lengthy discussions. (Tr. 69-72.) The VE testified that the hypothetical individual could perform such jobs as a wire worker, an electronics worker, and a bench assembler. (Tr. 70-71.)

Upon questioning from Plaintiff's counsel, the VE testified that an individual who would need to avoid work hazards such as "boxes on the floor, doors ajar, or approaching people or vehicles" would be unable to work in competitive employment, and that an individual who could not identify difference in shape or color "of small objects such as screws, nuts, or bolts" would eliminate a significant number of jobs that the VE identified. (Tr. 73-74.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905

7

F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 22, 2007, the application date.

2. The claimant has the following severe impairments: right eye blindness, glaucoma, and generalized anxiety disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours out of an eight-hour day; sit six hours out of an eight-hour day; occasionally climb ramps and stairs; occasionally bend, stoop, kneel, and crawl; reach in all directions; handle, finger and feel; should have no exposure to hazardous conditions; should have no requirements to require the reading of small print; can only occasionally view computer screens; and has no depth perception.

8

> She should not be required to perform any tasks that consist of spotting small imperfections, specifically things smaller than a compact disc (3-5 inches). She should perform simple, routine tasks with simple short instructions; make simple, work-related decisions; have few workplace changes; and only superficial interactions with customers, supervisors, and the public, meaning no confrontation, negotiation, or lengthy discussions.

5. The claimant has no past relevant work.

6. The claimant was born in December 1965 and was 41-years-old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Act, since August 22, 2007, the date the application was filed.

(Tr. 33-40.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence,

regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

#### 1. The ALJ Erred in Evaluating the Opinion of Consultative Examiner Dr. Lester.

Plaintiff argues that the ALJ erred in assessing her visual limitations, because the ALJ failed to adequately evaluate and weigh the opinion of consultative examiner Dr. Lester. According to Plaintiff, if the ALJ had appropriately considered Dr. Lester's opinion, "the visual limitations recognized by the ALJ in [Plaintiff's] residual functional capacity assessment would have been more extensive and would have resulted in a finding of disability." (Plaintiff's Brief ("Pl.'s Br.") 9.)

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for her decision to stand. *See, e.g., Thacker v. Comm'r of*

10

*Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

On June 6, 2012, Dr. Lester examined Plaintiff and opined, *inter alia*, that Plaintiff was unable to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; she could not determine differences in the shape and color of small objects such as screws, nuts, or bolts; and she was unable to drive or walk at a reasonable pace on rough or uneven services. (Tr. 508, 511.) In her hearing decision, the ALJ specifically acknowledged the conclusions Dr. Lester drew from his visual consultative examination of Plaintiff. (Tr. 37.) The ALJ summarized Dr. Lester's opinion and then indicated that she gave it "some weight," because it was "generally consistent with the evidence of record as a whole, although the record does not establish elsewhere she [Plaintiff] is colorblind." (*Id.*) Plaintiff maintains that the ALJ erred in failing to give appropriate weight and consideration to Dr. Lester's opinion, and that the ALJ selectively relied on portions of Dr. Lester's

11

opinion while rejecting others without proper explanation.[1]

Here, the ALJ did not discuss why she omitted from Plaintiff's RFC Dr. Lester's findings that Plaintiff could not avoid ordinary hazards such as boxes on the floor, doors ajar, or approaching people and vehicles, and that she is unable to determine differences in the shape of small objects such as screws, nuts, or bolts. Because the ALJ's calculation of Plaintiff's RFC was less restrictive than Dr. Lester's, and, therefore, contradicted Dr. Lester's opinion, S.S.R. 96-8p required the ALJ to explain her decision not to include all of Dr. Lester's visual limitations in Plaintiff's RFC. The Commissioner argues that substantial evidence–particularly the opinions of consultative examiner Dr. Drury and state agency physician Dr. Holbrook–supports the ALJ's determination of Plaintiff's RFC. However, the requirement of S.S.R. 96-8p is clear: where an ALJ's RFC conflicts with a medical source opinion in the record, the ALJ must explain why that opinion was not adopted. Importantly, Dr. Lester's opinion was rendered in June 2012, while the opinions of Dr. Drury and Dr. Holbrook were rendered in April and May 2008, respectively–four years earlier than Dr. Lester's opinion. Thus, it was especially critical for the ALJ to explain why she found that Plaintiff's visual impairments did not worsen between 2008 and 2011, despite Dr. Lester's findings and Plaintiff's possibly

---

[1] According to Plaintiff, the ALJ "recognized that Dr. Lester found that [Plaintiff] should never climb ladders or scaffolds, never balance, occasionally stoop, kneel, crouch and crawl, is unable to avoid ordinary hazards in the workplace, is unable to read very small print, book print, or computer screens," but erroneously omitted Dr. Lester's findings that Plaintiff could not avoid ordinary hazards such as boxes on the floor, doors ajar, or approaching people and vehicles, and that she is unable to determine differences in the shape of small objects such as screws, nuts, or bolts. (Pl.'s Br. 11.)

degenerating condition.

Furthermore, there is merit to Plaintiff's argument that she was prejudiced by the ALJ's decision not to adopt Dr. Lester's opinion in its entirety. During the administrative hearing in this case, the VE testified that an individual who would need to avoid work hazards such as "boxes on the floor, doors ajar, or approaching people or vehicles" would be unable to work in competitive employment, and that an individual who could not identify difference in shape or color "of small objects such as screws, nuts, or bolts" would eliminate a significant number of jobs that the VE identified. (Tr. 73-74.) Accordingly, Plaintiff has demonstrated that the ALJ's failure to adequately explain why she did not adopt the opinion of Dr. Lester was not harmless error, and therefore Plaintiff's first assignment of error presents a basis for remand of her case. On remand, the ALJ shall either adopt all of the limitations assigned by Dr. Lester, or explain her decision not to adopt certain limitations and the substantial evidence in the record that supports her conclusion.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 31, 2015